*In re* APPLICATION OF JOHN J. (JACK) WEBER, County Treasurer and *ex officio* County Collector of Will County for Order of Correct Tax on Property Paid Under Protest for 1990 (John J. (Jack) Weber, County Treasurer and *ex officio* County Collector, Applicant-Appellee, v. White Eagle Golf Club, Objector-Appellant).

Third District   No. 3—92—0420

Opinion filed February 3, 1993.—Modified on denial of rehearing March 11, 1993.

Henry B. Vess III and Richard W. Goeken, both of Dommermuth, Brestal, Cobine & West, Ltd., of Naperville (Kevin Gensler, of counsel), for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (Richard B. Taylor, Assistant State's Attorney, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

White Eagle Golf Club appeals from the dismissal of its tax objection to the 1990 real property taxes levied on the 85 acres of land comprising its golf course. The land in question had been taxed on an assessed valuation of $5,000 per acre.

Prior to 1990 the golf course land had been identified for tax purposes by the permanent real estate index number (PIN) 01—04—100—004 (hereafter, 004) and had been approved for open space valuation of $500 per acre under section 20g—1 of the Revenue Act of 1939 (35 ILCS 205/20g—1 (West 1992)), which provides:

> "[L]and which is used for open space purposes and has been so used for the 3 years immediately preceding the year in which the assessment is made shall be valued on the basis of its fair cash value, estimated at the price it would bring at a fair, voluntary sale for use by the buyer for open space purposes.
>
> Land is used for open space purposes within the meaning of this Section if it is more than 10 acres in area and *** conserves landscaped areas, such as public or private golf courses ***."

Section 20g—2 sets forth the procedure for applying for open spaces valuation as follows:

> "The person liable for taxes on land used for open space purposes must file a verified application *** with the county assessor of the county where the land is located by January 1 of each year for which that valuation is desired. If the application required by this Section is not filed by January 31 *** the failure to make that timely filing constitutes a waiver of the right to claim that additional valuation for that year. ***

If the application shows the applicant is entitled to the valuation under Section 20g—1, the county assessor shall approve it; otherwise, he shall reject the application." 35 ILCS 205/20g—2 (West 1992).

The White Eagle Golf Club (Golf Club) filed its application for open space valuation for PIN 004 for tax year 1990 on January 5, 1990, and the county supervisor of assessments approved the open spaces valuation of $500 per acre. However, when the Golf Club bill for 1990 taxes arrived in the late spring of 1991, the assessed valuation of the land was shown to be $5,000 per acre. The Golf Club had no prior notice that the open space valuation previously granted would not be used for the computation of 1990 taxes on the golf course land.

The increase was the result of an administrative error. In December of 1989 White Eagle Golf Club subdivided the land which included the golf course. Although the subdivision plat was filed in December 1989, new PINs were not immediately assigned to the various parcels. At the time the open space valuation application for 1990 was filed and granted, the Golf Club land was still identified on county records as PIN 004. According to county records, by the time 1990 taxes were extended, a new PIN had been assigned to the 85 acres in question here, and they were now designated as 010. Since no open space application had been granted for PIN 010, the valuation was increased to $5,000 per acre.

Section 20g—4 of the Revenue Act of 1939 expressly provides that the platting and subdivision of land shall not alone increase the assessed valuation. To the contrary, the assessed valuation of subdivided land must be determined on the basis of its fair market value "for the same purposes for which such land was used when last assessed prior to its platting." (35 ILCS 205/20g—4(b) (West 1992).) Therefore, clearly the tenfold increase in assessed valuation was contrary to the provisions of the Revenue Act of 1939.

The Golf Club paid its 1990 tax in two installments, one in June of 1991 and one in August of 1991, both under protest, and in due course, filed an objection in the proceedings before us here. After a hearing, the trial court dismissed the objection and subsequently denied a motion for reconsideration. The trial court ruled that the objector failed to pursue its administrative remedies by filing a complaint with the Will County board of review and that the objector failed to plead that an open space valuation for the parcel in question was granted for the tax year 1990.

The objector contends, first, that in its response to the county collector's motion to dismiss the objector pleaded that open space valuation had been granted for the golf course land for the year 1990, and subsequently for the tax year 1991 as well, and that the application forms reflecting the supervisor of assessments' action were attached to its response. Therefore, the court erred in ruling that those necessary facts were not pleaded. The county collector responds that the 1990 application designated PIN 004 as the parcel for which open space valuation was sought and that no application was filed for PIN 010. The county collector concludes that the failure to file a timely application for PIN 010 was a waiver of the right to claim open space valuation for that parcel.

There is no dispute that the land used for a golf course is still so used and that the only thing that has changed is its PIN. The assignment of a new PIN after the Golf Club land was subdivided was a ministerial duty performed by the county assessment map department. The documents in the record from the map department disclose that the number of parcel 004 was changed to 010 and other numbers not here involved. Thus, it appears that the objector complied with the law to the greatest extent possible to obtain its open space valuation for 1990.

The trial court's conclusion that the objector is barred for failure to pursue its administrative remedies was also erroneous. It is undisputed that the first notice the objector had of the increase in the assessed valuation of the golf course acreage was when the tax bill was received in 1991. The books of the board of review for the assessment year 1990 would have been closed by that time and a complaint for an error in an assessment could no longer be filed. See 35 ILCS 205/107 (West 1992).

The trial court relied upon those cases holding that a taxpayer must pursue administrative remedies to correct errors in tax assessments before judicial relief will be available. For example, in *People ex rel. Nordlund v. Lans* (1964), 31 Ill. 2d 477, 202 N.E.2d 450, the supreme court ruled that filing a complaint with the board of review is a condition precedent to filing objections to the collector's application for judgment. Accord *People ex rel. County Collector v. Bostwick* (1965), 33 Ill. 2d 74, 210 N.E.2d 189.

However, Illinois courts have not been inflexible in applying the exhaustion of remedies rule. In *Hoyne Savings & Loan Association v. Hare* (1974), 60 Ill. 2d 84, 322 N.E.2d 833, a new township assessor increased the value of certain residential land from $9,510 to $246,810 for the year 1971 based upon land uses not permitted un-

der the applicable zoning ordinance. Taxpayer had no actual notice until the tax bill was received, a date after the board of review had closed its books for the year. The taxpayer did not file with the board of review in 1972 either, but in 1973 the board acted on the taxpayer's complaint and reduced the valuation to $55,000. The supreme court observed that by the board's 1973 action, assessing officials had acknowledged that the 1971 assessment was grossly excessive, and so the court concluded that it was unfair and unjust to deny the taxpayer a remedy for 1971. An injunction granted by the trial court for a reduction in 1971 taxes was affirmed. However, no relief was granted for 1972 taxes because the taxpayer had an opportunity to file a complaint with board of review for that assessment year and failed to do so.

Similarly, in *People ex rel. Korzen v. Fulton Market Cold Storage Co.* (1976), 62 Ill. 2d 443, 343 N.E.2d 450, the court acknowledged that the filing of a complaint with the board of review would not be required if there were no means by which the reduction in the assessed valuation of the taxpayer's property could be effected under the statutory administrative procedure, even though such was not the case there.

In the cause before us, the record contains no evidence that the objector's increase in valuation was published prior to the extension of taxes. Thus, here, as in *Hoyne Savings & Loan Association v. Hare*, the taxpayer had no opportunity to pursue an administrative remedy for the year in question. In both cases, the assessing authorities admit the the taxpayer's assessment was grossly excessive, here by virtue of the reduced assessment granted subsequently. In fact, when the supervisor of assessments here approved the open space valuation for 1991, he established that PIN 010 had been used for open space purposes for the three years immediately preceding 1991.

Unlike the taxpayer in the *Hoyne Savings & Loan* case, the Golf Club did not seek injunctive relief against the county collector, but instead paid its taxes under protest and filed an objection based on the administrative errors which had resulted in an assessed valuation 10 times the proper amount. After the supervisor of assessments granted the Golf Club's application for open space valuation for 1990, that valuation was ignored simply because of a change in PIN for the parcel in question after the application was granted.

We hold that the circuit court of Will County erred in refusing to grant a reduction in the Golf Club's valuation as justice requires. Accordingly, we remand to the circuit court of Will County for fur-

ther proceedings to determine the correct amount of refund to which the Golf Club is entitled and to order same.

Reversed and remanded.

McCUSKEY, P.J., and STOUDER, J., concur.